## Case No. 15,516.

### UNITED STATES v. KELLY et al.

[4 Wash. C. C. 528.] 1

Circuit Court. E. D. Pennsylvania. Oct. Term. 1825.

SEAMEN—ENDEAVOR TO MAKE REVOLT—JOINT INDICTMENT—SEPARATE TRIALS—DISCRETION OF COURT.

1. What constitutes "an endeavor to make a revolt" under the act of congress of the United States? Mere insolent conduct to the master, disobedience of orders, or violence committed on the person of the master. unaccompanied by other acts showing an intention to subvert his command as master. is not sufficient. Mere conspiracy of the crew to displace the master, unaccompanied by overt acts, is not sufficient. Neither is concert among the crew to that end, essential to constitute the offence.

[Cited in U. S. v. Seagrist. Case No. 16,245; U. S. v. Huff. 13 Fed. 636.]

2. The offence may be committed in any kind of vessel.

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

3. Where many persons are included in one indictment. it is in the discretion of the court to try them separately or together.

[Cited in brief in Com. v. James. 99 Mass. 439.]

This was an indictment for endeavoring to make a revolt. The material facts proved in the cause were, that after the brig Lancaster had left the harbor of St. Thomas on her voyage to Porto Rico, Fowler. being ordered by the mate to do some necessary act, refused obedience to it. and sat down on the deck. The mate took hold of him to compel him to work; he seized the mate by the throat, and. after some struggling, he was overthrown and put into irons. In a little time after, the mate heard a cry of murder forward, and proceeded to the spot, where he found Doyle and .Kelly fighting. Doyle immediately warned the captain not to approach, threatening to throw him overboard if he did so, and added, that he would murder some of them before morning. In the presence of the captain he beat the cook. although ordered to desist, and swore that he would throw any person overboard who should attempt to put him into irons. He also was guilty repeatedly of disobedience, insolence to the captain. and of assaulting the mate, which finally consigned him to irons. Duncan refused to obey orders and was insolent to the captain and mate. and swore that he would do no work on board of the brig. To insolence and disobedience of orders, Kelly added a violent assault upon the captain, whom he seized by the throat, and had got him down. when the mate and a passenger coming from below, relieved him from his perilous situation, and finally succeeded in putting him in irons. After his handcuffs were on, he stated to the captain and mate, that the former might thank God he was not killed, and that they had got him under, for. in half an hour longer, he would have shot both of them, and then he would have been master of the brig. All the above acts of insolence, disobedience and violence. took place on the evening of the 24th of December last. So many of the crew, which consisted of six mariners only, being placed in confinement, the captain was obliged to borrow from another vessel in company with him, three sailors. to assist in navigating the brig into port.

The counsel for the defendants insisted: (1) That a revolt, not being defined by the act of congress, by the common, or by any other law, it could not be deemed an offence for which any person could be punished; and that this court had so decided, in the case of U. S. v. Sharp. 1 Pet. [26 U. S.] 118. (2) That to constitute the offence of endeavouring to make a revolt, as defined in U. S. v. Smith [Case No. 16,337]. all the crew must be concerned in it, and that in this case. nothing like concert between the prisoners to effect such an object is

proved. (3) That the thirteenth section of the old crimes act, whilst it provides for the offence of confining the captain on board of any "ship" or "vessel," drops the latter word in describing this offence; and consequently, it is not punishable, unless it be committed on board of a "ship," whereas this vessel was a "brig."

The District Attorney, for the United States.

Chew & Biddle, for defendants.

WASHINGTON, Circuit Justice, after summing up the evidence, proceeded. The difficulty which the court felt in Sharp's Case was not so much in giving a definition of the term "revolt," as in giving it judicially. The definition which I then suggested, as having previously impressed my mind, seemed to me to partake too much of fancy to be made the ground of a criminal prosecution; and as there was no such phrase to be met with in the common law of England, to which a meaning had been affixed, and to which the court could refer, it seemed to us too much like legislating to give a definition of our own. But as a learned judge of the supreme court of the United States has given a definition of the term "revolt,"—and which we approve of, provided it can, or ought to be given judicially, (which we think very questionable),—we shall, on this occasion, yield to the authority of his opinion; more especially as we understand that another learned judge of the same court has lately given a similar definition in his circuit. Should the defendants be convicted, and be advised by their counsel to take the opinion of the supreme court on this question, which it is high time should be put to rest, the court will place the cause in a train to be carried up to that tribunal.

I proceed then to state to the jury that the offence charged in this indictment, consists in the endeavor of the crew of a vessel, or any one or more of them to overthrow the legitimate authority of the commander of her, with intention to remove him from his command; or, against his will, to take possession of the vessel by assuming and exercising the government and navigation of her, or by transferring their obedience from the lawful commander to one who has usurped his station, or to whom they may transfer their obedience.

This, like most other general definitions, may require, in particular cases, to be explained and qualified; some instances of which are noticed in the case of U. S. v. Smith [Case No. 16,337]. It may therefore be proper to state to the jury, that mere insolent conduct, disobedience of orders, or even violence committed on the person of the master, unattended by other circumstances, will not amount to this offence. Those acts must be coupled with an intent to subvert the authority of the master, and to displace him from his command; which intention is to be discovered from the expressions or the actions of the parties concerned, and from all the circumstances attending the transaction. A mere conspiracy of the crew to make a revolt, will not amount to an endeavour to make it, unless it be followed up by some overt acts tending to that end; nor is concert amongst the crew to make a revolt an essential ingredient in constituting the offence. One or more daring individuals, depending for success on their courage and personal strength, on their popularity with the crew, or on the timidity of their characters, may, by destroying or confining the officers, without concert of the crew, make a revolt, and of course may endeavor to make it; the former necessarily including the latter offence. This was strongly exemplified in the case of U. S. v. Haskell [Id. 15,321], tried here at the October session 1823, in which there was great reason for believing that Smith relied solely upon his own prowess, and would have succeeded, could he have conquered the master, after the severe wounds he had inflicted on him.

The question then for the jury to decide in this case is, whether the acts of disobedience, the insolence, and the violence committed by these men, who formed two thirds of the crew, tended to subvert the authority and command of the captain, and were so intended? As to Kelly, he openly avowed that such was his intention, and you will say, under all the circumstances of the case, whether the same design ought, or ought not, to be attributed to those of the crew who, at or about the same time, acted in open opposition to the authority of the master, and committed acts of violence upon the mate, in enormity little short of that committed by Kelly.

As to the objection that this offence cannot be committed in a vessel of any other description that that of a "ship," there is nothing in it. "Ship" is a general term, and is constantly used as such. Not only nautical men, merchants, and others, but legislators, use terms showing that it is so understood; they all speak of the ship's papers, the ship's husband, shipwreck, &c., whether the vessel referred to has one, two, or three masts.

The jury found a verdict of guilty against all the defendants except Duncan; and there being no chance, as they stated, to agree respecting him, the district attorney entered a nolle prosequi as to him.

In this case, the counsel for the defendants moved that they might be tried separately. This, being a matter in the discretion of the court, was refused: no sufficient reason being stated for the application, and, if granted, would produce a great consumption of time.

The above case was taken to the supreme court upon a certificate of a division of opinion of the judges, as to the definition of the word "revolt," where it was decided. See 11 Wheat. [24 U. S.] 417.